# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2522

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Minnesota. |
| | * | |
| Emery Joseph Beaulieu, also known as | * | |
| Joe Beaulieu, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 22, 1999

Filed: October 28, 1999

_____

Before McMILLIAN, LAY, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

Emery Joseph Beaulieu appeals his jury conviction on two counts of aggravated sexual abuse of a child on an Indian reservation in violation of 18 U.S.C. § 2241(c). We reverse.

At Beaulieu's 1999 trial, the victim, S.L., testified Beaulieu had sexually abused her on one occasion when she was eight or nine years old. S.L. testified that in the spring of 1995 or 1996, she and her sister, who was eleven at the time, had gone to

Beaulieu's house to babysit. That night, as S.L. slept on a sofa bed, she awakened and felt someone breathing on her who smelled like beer. Her pants were pulled down to the tops of her thighs, and she saw Beaulieu touching her on her genital area. She turned on her side and tried to pretend she was asleep, but Beaulieu "put his thing in [her] butt." S.L. told her sister and a friend about the abuse. About a year later, S.L. told her mother. S.L. visited a psychologist in 1997 and a nurse in 1998 and told them what Beaulieu had done. S.L.'s mother, friend, nurse, and psychologist testified at trial that S.L. told them Beaulieu anally penetrated her.

Beaulieu first contends the district court abused its discretion in admitting the hearsay testimony of S.L.'s mother, friend, nurse, and psychologist. The district court admitted the testimony of S.L.'s mother and friend under Federal Rule of Evidence 801(d)(1)(B), which provides that earlier statements of a witness are not hearsay if they are "consistent with the [witness's] testimony and [are] offered to rebut an express or implied charge against the [witness] of recent fabrication or improper influence or motive." Rule 801(d)(1)(B) plainly "defines prior consistent statements as nonhearsay only if they are offered to rebut a charge of 'recent fabrication or improper influence or motive.' " Tome v. United States, 513 U.S. 150, 157 (1995) (quoting Fed. R. Evid. 801(d)(1)(B)). "Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." Id. "The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told." Id. at 157-58. Rule 801(d)(1)(B) permits introduction of earlier consistent statements "only when those statements were made before the charged recent fabrication or improper influence or motive." Id. at 167.

The first witness to testify about S.L.'s out-of-court statements was S.L.'s mother. When the Government asked S.L.'s mother what S.L. had told her, defense counsel objected that the testimony was hearsay, arguing S.L.'s statement to her mother was not admissible under Rule 801 because the defense had not alleged S.L. recently fabricated her story and because S.L.'s earlier statement to her mother was not made before any

motive to fabricate may have arisen. The Government responded that Rule 801 did not require the statement to be made earlier and that the testimony was a peremptory rebuttal to an improper motive charge that it believed the defense would make later. Stating "a lot of things are going to be covered during the trial," the district court "conditionally" permitted the testimony. See Trial Trans. I-87. Defense counsel voiced the same objection during the testimony of S.L.'s friend, and the court made the same ruling. See id. at I-107. Defense counsel never asserted S.L. had an improper motive or fabricated her account of the abuse, however, until closing arguments when defense counsel simply argued S.L. had made up the story from the start.

We agree with Beaulieu that S.L.'s out-of-court statements about the abuse were not admissible under Rule 801(d)(1)(B). "Although those statements might have been probative on the question whether the alleged conduct had occurred, they shed [no] light on whether [S.L.] had [any] motive to fabricate." Tome, 513 U.S. at 165. As in Tome, the Government in this case improperly relied on the statements for substantive purposes. See id. During its closing, the Government told the jury, "This case boils down to the testimony of [S.L.] and whether or not you believe what [S.L.] testified to." Trial Trans. at III-17-18. The Government then invited the jury to rely on the earlier consistent statements as evidence of S.L.'s credibility and as evidence of Beaulieu's guilt, arguing: "If you believe [S.L.'s] testimony, and if you believe the consistency and the detail of the report that she gave to her friend, . . . her mother, . . . the nurse, and . . . the doctor, that's enough to prove beyond a reasonable doubt that [Beaulieu] is guilty of both crimes charged in the indictment." Id. at III-20. In addition, S.L.'s out-of-court statements were not made before the alleged fabrication. See Tome, 513 U.S. at 167. We thus conclude the district court abused its discretion in admitting the statements under Rule 801(d)(1)(B).

The district court also permitted the nurse practitioner and psychologist who examined S.L. to testify that S.L. told them Beaulieu anally penetrated her. The Government argued this testimony was permissible both as prior consistent statements

under Rule 801(d)(1)(B) and as statements made for the purpose of medical diagnosis or treatment under Rule 803(4). For the reasons applicable to S.L.'s out-of-court statements to her mother and friend, S.L.'s out-of-court statements to the nurse and psychologist were not admissible under Rule 801(d)(1)(B). It appears, however, that the district court permitted the testimony under Rule 803(4), which provides, "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the rule against hearsay testimony.

We have held "a declarant's statements relating the identity of the individual allegedly responsible for [her] injuries or condition 'would seldom, if ever,' be reasonably pertinent to treatment or diagnosis." United States v. Renville, 779 F.2d 430, 436 (8th Cir. 1985) (quoting United States v. Iron Shell, 633 F.2d 77, 84 (8th Cir. 1980)). Statements of identity are rarely made to promote effective treatment, and doctors rarely have any reason to rely on statements of identity in treating or diagnosing a patient. See id. When the abuser is a member of the victim's immediate household, however, a statement of identity may be reasonably pertinent to treatment or diagnosis because the doctor has an obligation to insure the child is removed from the abusive environment. See id. at 436-38. Statements by a child abuse victim to a physician identifying the abuser are admissible only when the prosecution shows the victim's motive in making the statement was consistent with the purpose of promoting treatment--" 'where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding.' " Olesen v. Class, 164 F.3d 1096, 1098 (8th Cir. 1999) (quoting Renville, 779 F.2d at 436).

The prosecution failed to make this showing in Beaulieu's case. There is no evidence in the record that the nurse or psychologist explained to S.L. that the identity of her abuser was important to diagnosis or treatment. See id. Further, S.L.'s own

testimony, on both direct and cross-examination, shows she understood the purpose of her visits with the nurse and psychologist was "[j]ust to get evidence." Trial Trans. at II-82, II-89. We conclude the district court abused its discretion in admitting S.L.'s out-of-court statements to the nurse and psychologist under Rule 803(4). We also conclude the improper admission of S.L.'s statements to her mother, friend, nurse, and psychologist warrant reversal because the rulings affect the substantial rights of Beaulieu and had more than a slight influence on the verdict. See United States v. Ballew, 40 F.3d 936, 941 (8th Cir. 1994).

Beaulieu next contends the district court abused its discretion and violated Beaulieu's right to a public trial when the court granted the Government's motion for closure of the courtroom during the testimony of S.L. and her sister. At the time of the trial, S.L. was eleven years old and her sister was fourteen. Before their testimony, the district court asked Beaulieu's mother and sister and a juror's spouse to leave the courtroom, but allowed others, including S.L.'s mother and grandmother, to remain.

A defendant in a criminal proceeding has a right to a public trial, see U.S. Const. amend. VI, but this right is not absolute and in rare circumstances yields to other interests, see Waller v. Georgia, 467 U.S. 39, 45 (1984). "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceedings, and it must make findings adequate to support the closure." Id. at 48.

We doubt the record sufficiently supports the partial temporary closure of the courtroom at Beaulieu's trial. It appears that the district court based closure on the court's previous experience with juvenile witnesses generally rather than on findings made with respect to S.L. and her sister on the facts of this case. Given our reversal of Beaulieu's conviction for evidentiary errors, however, we need not resolve the

closure issue. On retrial, the court will have another opportunity to make findings adequate to support closure.

Beaulieu last contends the district court abused its discretion in failing to exclude evidence that S.L.'s sister may have been the victim of sexual abuse by Beaulieu. The evidence consisted of testimony by S.L.'s sister and mother that the sister had gone out drinking one night with Beaulieu and that he and another person had dropped her off at home the next morning with her pants on backwards and livid marks on her neck and chest. The sister testified she had blacked out during the evening and did not remember what had happened. Beaulieu was never charged with any offense as a result of the allegation.

Before trial, the Government gave notice of its intent to introduce the evidence under Federal Rule of Evidence 414(a), which provides that in a case charging a defendant with a child molestation offense, "evidence of the defendant's commission of another offense or offenses of child molestation is admissible." The defense responded that the similar crime never happened, the Government's evidence was too weak, and under Federal Rule of Evidence 403, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. See United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997) (evidence offered under Rule 414 is still subject to Rule 403 balancing). The district court concluded the sufficiency of proof went to the weight to be given the evidence rather than its exclusion. Beaulieu contests this conclusion.

We observe that note five to the official commentary for Rule 414 states, "Evidence of uncharged child molestation is admissible if the prosecution provides enough evidence to support a finding, by a preponderance of the evidence, that the defendant committed the act." Because we have already decided reversal is necessary based on other grounds, we leave reconsideration of this evidentiary issue to the district court on retrial.

-6-

We thus reverse and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.